People v Ortiz (2019 NY Slip Op 00221)





People v Ortiz


2019 NY Slip Op 00221


Decided on January 15, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 15, 2019

Richter, J.P., Manzanet-Daniels, Tom, Webber, Gesmer, JJ.


7899 1055/09

[*1]The People of the State of New York, Respondent,
v
Jose Ortiz, Defendant-Appellant.


Christina A. Swarns, Office of the Appellate Defender, New York (Victorien Wu of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Ryan P. Mansell of counsel), for respondent.



Judgment, Supreme Court, Bronx County (Caesar D. Cirigliano, J.), rendered August 2, 2011, convicting defendant, after a jury trial, of assault in the first degree and two counts of burglary in the first degree, and sentencing him, as a second violent felony offender, to concurrent prison terms of 20 years, unanimously reversed, on the law, and the matter remanded for a new trial.
This case involves allegations that defendant broke into the home of his girlfriend and stabbed her. Defendant was charged with attempted murder in the second degree, and related crimes.
During trial, the court permitted Jennifer Mercedes, a subpoena compliance agent with T-mobile, to testify that on the date of the attack two calls were made from defendant's cell phone, which were transmitted to a cell tower at 2112 Starling Avenue in the Bronx. Mercedes opined that defendant's phone thus had to be within two miles of that tower, which was located a block from the victim's apartment. Counsel's objection to her testimony sufficiently preserved the issue, and the court erred in permitting her testimony.
"[T]estimony on how cell phone towers operate must be offered by an expert witness" because an analysis of the possible ranges of cell phone towers and how they operate is beyond a juror's day-to-day experience and knowledge (United States v Natal, 849 F3d 530, 536 & n 5 [2d Cir 2017], cert denied __ US __, 138 S Ct 276 [2017]). Mercedes was not an engineer and was not qualified, without an engineering background, to reach further conclusions about why defendant's cell phone hit the Starling Avenue tower, i.e. whether it was because it was closest or strongest (compare People v Littlejohn, 112 AD3d 67, 73 [2d Dept 2013], lv denied 22 NY3d 1140 [2014] [court providently exercised its discretion in concluding that a T-Mobile radio frequency engineer with 10 years of experience in the field was qualified to provide expert testimony regarding "deductions made from cell phone site data"]). Thus, her opinion about the two-mile coverage area of the tower required specialized knowledge she did not have.
The trial court also permitted a police officer to testify twice, over defense objection, that the victim had identified her attacker as "male Hispanic, bald, by the name of Jose Ortiz." This too was error. "Testimony by one witness (e.g., a police officer) to a previous identification of the defendant by another witness (e.g., a victim) is inadmissible" (People v Smith, 22 NY3d 462, 466 [2013]; see also People v Owens, 127 AD3d 561, 563 [1st Dept 2015], lv denied 27 NY3d 1004 [2016] [characterizing testimony of witness that he received a phone call from victim naming defendant as the attacker as hearsay because it was an "out-of-court statement to [the witness] identifying defendant as his assailant — either by name or by an identifying description that allowed [the witness] to name [the defendant]").
Furthermore, in its charge to the jury, the court improperly highlighted the identification evidence favorable to the prosecution and told the jury that such testimony
"which taken then also serves to establish the defendant is the actual perpetrator. [*2]In deciding whether the defendant is the ... actual perpetrator of the charged crimes, you must consider all the evidence you have heard in the case on that issue from whatever source, give particular attention to and examining with care the testimony of [the victim] regarding all of the circumstances surrounding the commission of the charged crime"
The court also improperly credited the victim's earlier identification of defendant when it told the jury that she had identified defendant when her "memory was fresher than at present." Generally, an unbalanced marshaling of the evidence will not constitute reversible error unless, viewing the charge as a whole, the imbalance results in prejudice to the defendant and deprives him of a fair trial (People v Culhane, 45 NY2d 757, 758 [1978], cert denied 439 US 1047 [1978]; People v Martinez, 100 AD3d 537, 538 [1st Dept 2012], affd 22 NY3d 551 [2014]). However, we must view this in light of the other errors regarding identification.
The court should have given a missing witness charge for two detectives the People had identified as its witnesses, and who had knowledge highly material to the case (see People v Savinon, 100 NY2d 192, 196 [2003]). These detectives were the lead detective on the case, who interviewed a witness who said he saw defendant leaving the victim's building, and another detective who interviewed the victim at the hospital.
Nor should the court have referenced defendant's failure to testify to the jury two times. This improperly highlighted defendant's silence, thereby prejudicing defendant.
The cumulative effect of these errors cannot be dismissed as harmless. Defendant's main defense was that the witnesses were mistaken when they identified him and many of the errors concerned his identification. The combined effects of these errors served to deprive defendant of his fundamental right to a fair trial and require reversal of the judgment.
Moreover, during trial, a juror revealed that he had an interaction with a court officer that left him feeling "really ... violated, ... really disrespected," and "upset about the whole situation," even after speaking to the officer's superior, and the court acknowledged that he could see in the juror's face how upset he was. The court offered to adjourn proceedings for the rest of the day to give the juror an opportunity to process what happened, and relax, and to then advise the court the next day whether he could be fair to both parties. The record contains no discussion with the juror the following day to ensure that he could pay attention and be fair to both parties.
The court's inquiry left unresolved the question of whether the juror was grossly unqualified to serve due to any ongoing inability to be fair and focus on the case at hand. Thus it fell
short of a "probing and tactful" inquiry (People v Sanchez, 99 NY2d 622, 623 [2003] [internal quotation marks omitted]; see also People v Teichman, 66 AD3d 523, 524 [1st Dept 2009], lv denied 13 NY3d 942 [2010]; People v Sipas, 246 AD2d 408 [1st Dept 1998]). Accordingly, reversal is warranted.
In light of our determination, we find it unnecessary to reach defendant's remaining contentions.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 15, 2019
CLERK